Karen L. Martinez (Utah State Bar No. 7914)
martinezk@sec.gov
Thomas M. Melton (Utah State Bar No. 4999)
meltont@sec.gov
Tanya Beard (Utah State Bar No. 9106)
beardt@sec.gov
Attorneys for Plaintiff
Securities & Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Telephone: 801-524-5796
Facsimile: 801-524-5262

Local Counsel
Alan Conilogue (Idaho State Bar No. 3196)
aconilogue@finance.idaho.gov
Deputy Attorney General
State of Idaho
P.O. Box 83720
Boise, Idaho 83720-0031
Telephone: 208-332-8093
Facsimile: 208-332-8016

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil No. |
| PLAINTIFF, | Judge |
| v. | |
| DAREN L. PALMER and TRIGON GROUP, INC., a Nevada Corporation, | **COMPLAINT** |
| DEFENDANTS. | |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint against Defendants alleges as follows:

## INTRODUCTION

1. This matter involves the offer and sale of unregistered securities by Trigon Group, Inc. ("Trigon") and its principal, Daren L. Palmer ("Palmer").

2. Trigon markets itself as an investment business specializing in helping clients generate cash flow through its trading program, which purportedly generated annual returns of 20-25% per year.

3. Trigon and Palmer sold securities in the form of promissory notes and investment contracts to over 55 investors in unregistered, non-exempt transactions raising at least $40 million.

4. Palmer marketed himself and Trigon to investors by representing that he had a complex, riskless trading strategy through which he invested in indexes, S&P 500 options or futures, currency futures and stocks in a way that generated consistent annual returns of 20 percent or greater.

5. Palmer placed only a fraction of investor funds into trading accounts and, instead of generating the fantastic returns he claimed, Palmer used investor funds to pay personal expenses and to pay bogus returns to earlier investors in a classic Ponzi scheme.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

7. Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Idaho.

8. Venue for this action is proper in the District of Idaho under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because certain of the defendants reside in and transact business in this district.

9. Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and course of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

10. Defendants' conduct took place in connection with the offer, purchase and/or sale of securities in the form of Promissory Notes or investment contracts.

**DEFENDANTS**

11. **Trigon Group, Inc.** ("Trigon") is a Nevada corporation headquartered in Idaho Falls, Idaho. Trigon claims to be an investment business, specializing in helping clients generate high annual returns of approximately 20-25 percent through a proprietary trading strategy. Palmer is the sole owner of Trigon. Trigon has not registered any offering of its securities under the Securities Act or a class of Securities under the Exchange Act.

12. **Daren L. Palmer** ("Palmer"), age 40, is an Idaho resident living in Idaho Falls, Idaho. Palmer is the President and sole owner of Trigon. Palmer has never been registered with the Commission in any capacity and has never been licensed to sell securities.

**BACKGROUND**

13. Beginning in 1996 and continuing through October 2008, Trigon and Palmer sold securities in the form of promissory notes and investment contracts to

14. The majority of Palmer's investors live in Idaho Falls, Idaho, as part of a close community of Palmer's friends and neighbors.

15. Palmer marketed himself and Trigon to investors by representing that he had learned a complex trading strategy through which he invested in indexes, S&P 500 options or futures, currency futures and stocks in a way that generated consistent annual returns of 20 percent or greater.

16. Palmer touted his reputation in the Idaho Falls community as an honest family man who had a long track record of producing high returns for investors.

17. Palmer explained to investors that his trading program was difficult to understand but that it essentially operated like a hedge fund. Palmer told investors that their funds would be combined with the funds of other investors and traded as one fund.

18. Palmer told investors that there were no risks to their principal and that high returns were guaranteed. Palmer claimed that he had been generating 20 percent or greater annual returns for more than twelve years.

19. Palmer advised investors to place monies with him and Trigon in part because, under his trading strategy, he could earn high returns regardless of how the market performed.

20. Palmer told investors that he would be compensated through the portion of the trading profits in excess of the 20% returns he promised to investors.

21. In some instances, Palmer evidenced the investment monies he received with a Promissory Note ("Note"). Palmer signed the Notes individually or as the President of Trigon.

22. While the Notes to individual investors are not identical, they commonly state that Palmer owes the investor the principal plus interest of 20 to 25 percent annually.

23. In some instances, Palmer's Notes indicated that the investor would be paid with interest at the rate per performance from Trigon. In such cases, investors were verbally promised a return of at least 20 percent.

24. Palmer recruited investors through referrals from other investors. Many of Palmer's early investors mentioned their positive experiences with Trigon and Palmer to their families and neighbors, who then invested with Palmer.

25. Some investors obtained lines of credit in order to invest funds with Palmer since Palmer guaranteed a high rate of return with no risk to their principal.

26. Palmer communicated with investors and prospective investors through emails, text messaging, the postal service and phone calls. Investors wired funds to bank accounts Palmer controlled.

**THE SCHEME FALLS APART**

27. Beginning in October 2008, investors became concerned about Trigon and Palmer because Trigon failed to pay investors their promised quarterly interest payments.

28. Palmer asked investors to wait for their checks and gave a variety of explanations for his delay, including the downturn in the market.

29. On December 15, 2008, after failing to make timely quarterly payments to investors, Palmer admitted that he had lost investors' principals.

**PALMER'S MISREPRESENTATIONS**

30. Palmer did not have a successful trading strategy which generated annual returns of over 20 percent per year. Most investors' funds were not placed in any type of trading account whatsoever.

31. Palmer prepared and provided investors with quarterly statements that represented falsely-earned profits from Palmer's purported trading activity.

32. Instead of generating returns of 20-25 percent for investors, Palmer paid earlier investors' quarterly payments with funds derived from newly-invested money.

33. Palmer also used investor funds for personal purposes including making payments on credit cards, a partially completed $12 million mansion in Idaho Falls, purchasing snow mobiles and paying himself a "salary."

34. Palmer failed to disclose that he paid himself a huge salary or used investor funds for personal purposes.

35. Palmer did not reveal to investors that he paid their quarterly returns with funds from new investors.

36. Palmer told investors he was licensed to sell securities.

37. Palmer has never held any securities licenses.

38. Palmer's misrepresentations and omissions were material to a reasonable investor.

## FIRST CAUSE OF ACTION
## EMPLOYMENT OF A DEVICE, SCHEME OR ARTIFICE TO DEFRAUD
## Violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]

39. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 38, above.

40. Defendants, and each of them, by engaging in conduct described in Paragraphs 1 though 38, above, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter, employed devices, schemes, or artifices to defraud.

41. By reason of the foregoing, Defendants, and each of them, directly or indirectly, violated, and unless restrained and enjoined by this Court, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

**SECOND CAUSE OF ACTION**
**FRAUD IN THE OFFER AND SALE OF SECURITIES**
**Violations of Section 17(a)(2) and (3) of the Securities Act**
**[15 U.S.C. § 77q(a)(2) and (3)]**

42. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 38, above.

43. Defendants, and each of them, by engaging in the conduct described in Paragraphs 1 through 38, above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

44. By reason of the foregoing, Defendants, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

**THIRD CAUSE OF ACTION**
**FRAUD IN CONNECTION WITH THE PURCHASE AND SALE OF SECURITIES**
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

45. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 38, above.

46. Defendants, and each of them, by engaging in the conduct described in Paragraphs 1 through 38, above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, (1) employed devices, schemes, or artifices to defraud; (2) made untrue statements of material fact or omitted to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or (3) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

47. By reason of the foregoing, Defendants, and each of them, violated, and unless restrained and enjoined will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**FOURTH CAUSE OF ACTION**
**OFFER AND SALE OF UNREGISTERED SECURITIES**
**Violation of Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]**

48. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 38, above.

49. Defendants, and each of them, by engaging in the conduct described in paragraphs 1 through 38, above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the

mails, offered to sell or sold securities or, directly or indirectly, or carried such securities through the mails or in interstate commerce, for the purpose of sale or delivery after sale.

50. No registration statement has been filed with the Commission or has been in effect with respect to these securities.

51. By reason of the foregoing, Defendants, directly or indirectly violated, and unless enjoined will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FIFTH CAUSE OF ACTION
## OFFER AND SALE OF SECURITIES BY AN UNREGISTERED BROKER OR DEALER
## Violation of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]

52. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 38, above.

53. Defendant Palmer, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase and sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker-dealer registered with the Commission.

54. By reason of the foregoing, Defendant Palmer violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. 78o(a)].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

**I**

Issue findings of fact and conclusions of law that the Defendants committed the violations charged herein.

**II**

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that preliminarily and permanently enjoin, Defendant Trigon, and its officers agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act, and Sections 10(b) of the Exchange Act and Rule 10b-5 thereunder.

**III**

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that preliminarily and permanently enjoin, Defendant Palmer, and his officers agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act, and Sections 10(b) and 15(a) of the Exchange Act and Rule 10b-5 thereunder.

**IV**

Issue, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, orders that temporarily, preliminarily and permanently enjoin Defendants, and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from: (A) transferring, changing, wasting, dissipating, converting, concealing, or otherwise disposing of, in any manner, any funds, assets, claims, or other property or assets owned or controlled by, or in the

possession or custody of these Defendants; and (B) transferring, assigning, selling, hypothecating, or otherwise disposing of any assets of Trigon.

**V**

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminary and permanently restrain and enjoin Defendants, and each of them, and their officers agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, books, records, computer programs, computer files, computer printouts, correspondence, including e-mail, whether stored electronically or in hard-copy, memoranda, brochures, or any other documents of any kind that pertain in any manner to the business of the Defendants.

**VI**

Enter an order directing Defendants, and each of them, to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act.

**VII**

Enter an order directing Defendants to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains.

**VIII**

Grant such further equitable relief as this Court deems just, appropriate, and necessary, including, but not limited to, a freeze of assets and the acceleration of discovery, including the forthwith production of documents.

**IX**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated this 26th day of February 2009.

Respectfully submitted,

/s/ Karen L. Martinez

_______________________________

Karen L. Martinez
Thomas M. Melton
Tanya G. Beard
Attorneys for Plaintiff
Securities and Exchange Commission